UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| HAKAN YALINCAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | CIVIL CASE NO: |
| ) | |
| RENEE E. RING, PAUL ZOFNASS, ) | |
| AND 229 UPPER SHAD ROAD, LLC, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT AND JURY DEMAND**

As and for his Complaint, the Plaintiff, Hakan Yalincak, hereby alleges as follows:

**I.       PRELIMINARY STATEMENT**

1.       This Complaint against Renee E. Ring ("Ring"), Paul Zofnass ("Zofnass"), and 229 Upper Shad Road, LLC arises from the defendants' renting of a certain real property known as 229 Upper Shad Road, located in Pound Ridge, New York. The defendants, directly and indirectly, including, without limitation, through their real estate agent and/or broker, targeted the Plaintiff, Hakan Yalincak ("Yalincak"), a Connecticut resident and made fraudulent misrepresentations with regard to the premises to Yalincak, his family, and subsequently to the United States Attorney's Office for the District of Connecticut, New Haven, Connecticut Office. The defendants further made defamatory, derogatory, false, and/or reckless statements in or about May 2005 to numerous media outlets, as well as, the United States Attorney's Office for the District of Connecticut, New Haven, Connecticut Office. The defendants further inflicted physical injury and harm on Yalincak's Maltese dog (hereinafter referred

1

to as "Celine") by violently kicking Celine resulting in permanent damage. In this Complaint the Plaintiff asks for Declaratory and Injunctive Relief, damages for fraud, violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), as well as, for emotional distress, mental anguish and violations of 42 U.S.C. § 1985.

## II.      PARTIES

2.      The plaintiff Hakan Yalincak ("Yalincak") is an individual and a resident of the State of Connecticut.

3.      The defendant Renee E. Ring ("Ring") is an individual and a resident of the State of New York.

4.      The defendant Paul Zofnass ("Zofnass") is an individual and a resident of the State of New York.

5.      The defendant 229 Upper Shad Road, LLC ("229 Upper Shad") is a limited liability company formed under the laws of the State of New York with a principal place of business located at 229 Upper Shad Road, Pound Ridge, New York 10576.

6.      Upon information and belief, the defendant Ring is the managing member of 229 Upper Shad and Zofnass is a member of 229 Upper Shad.

## III.     JURISDICTION AND VENUE

7.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 federal question (violations of 42 U.S.C. §1985), 28 U.S.C. §1332(a)(1), because the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and because the matter is between citizens of different states.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in the State of Connecticut[1].

## IV. STATEMENT OF FACTS

### A. BACKGROUND

9. In or about August 2004 the defendants herein, through their real estate agent advertised to Yalincak a certain real property known as "229 Upper Shad Road," located in Pound Ridge, New York[2].

10. On August 31, 2004, Yalincak entered into a one-year lease contract with 229 Upper Shad (to expire on August 31, 2005). The contract was executed via facsimile in Connecticut (see ¶9n2), and was countersigned by Ring, on behalf of 229 Upper Shad. (A copy of the said contract is attached hereto as Exhibit A.)

11. As consideration for the contract Yalincak wired the sum of $77,000.00 to Ring's bank account at Citibank, N.A., located in the State of New York. The sum was composed of the first year's rent ($66,000.00), which was pre-paid by Yalincak, and a security deposit equal to two months rent ($11,000.00).

12. In or about April 2005, Ring conducted an inspection of the home and advised Yalincak and his family that the home has been kept "wonderfully clean" and in "spectacular condition."

---

[1] As a note, this present Complaint differs from a Complaint pending in Stamford Superior Court, Yalincak et al v. 229 Upper Shad Road, LLC et al., Case No. CV-06-5001312-S. The Plaintiff is a Connecticut customer, hence the contract dated August 31, 2004 entered into by the parties targeted a Connecticut customer. See, Conn. Gen. Stat. §§33-1219(f)(1) and (2), 33-929(f); Conn. Gen. Stat. 52-59b. See also, United States Trust Co. v. Bohart, 197 Conn. at 34, 42 (1985) ("fraud or overreaching"); Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495, 498 (1985) (citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-12 (1972); Olson v. Accessory Controls & Equipment Corp., 54 Conn. App. 506, 735 A.2d 881 (1999).

[2] See, Renee Ring/Paul Zofnass facsimile sent on August 31, 2004 via facsimile from (914) 7645134 to (203) 6224899 (Yalincak).

3

13. On May 6, 2005, Yalincak was arrested at the 229 Upper Shad premises in connection with an indictment, <u>United States v. Hakan Yalincak</u>, CR. NO. 3:05-CR-00111 (JBA) charging a violation of 18 U.S.C. §1344 (bank fraud). See, <u>Student Pleads Guilty to Bank Fraud</u>, by Sarah Portlock of Washington Square News, September 6, 2006.

14. On May 12, 2005, the Court, Margolis, M.J., held a detention hearing (initial detention hearing) pursuant to 18 U.S.C. §3142 in the United States District Court for the District of Connecticut.

15. At the initial detention hearing the United States Attorney's Office advised the Court, Margolis, M.J., that "the landlord [Ring] has advised the Government that the Yalincaks [Hakan] are behind on their rent." As a result, the Court subsequently entered an Order of Detention.

16. Beginning in or about 2006 and continuing until the present, Yalincak learned from the Government during several meetings that Ring and Zofnass had advised the Government, subsequent to Yalincak's arrest in connection with the aforementioned indictment, in part, as follows: "Hakan [Yalincak] is behind on his rent." The Government admitted in its May 3, 2006 response to Yalincak's request for release pending trial that it had misinformed the Court, Margolis, M.J. during the initial hearing held on May 12, 2005. In addition, the Government admitted in open Court that as a result of inaccurate information provided by Ring that it had misinformed the Court, Margolis, M.J. during the initial hearing held on May 12, 2005. See <u>Helping Feds May Lessen Time</u>, by Sarah Portlock and David Idol of Washington Square News, September 13, 2006. See also, <u>Student</u>

4

Posts Bail On House Arrest, by Sarah Portlock of Washington Square News, January 16, 2007.

17. Between May 6, 2005 and January 5, 2007, Yalincak was in pre-trial detention at the Donald W. Wyatt Detention Facility, located in Central Falls, Rhode Island.

18. On January 5, 2007, Yalincak was released pursuant to an Order Setting Conditions for Release entered by The Honorable Janet Bond Arterton, United States District Judge[3].

## B. INJURY AS A RESULT OF DEFENDANTS' ACTIONS

18. Subsequently, Yalincak has learned from his father, Dr. Omer B. Yalincak, and his sister, Hale Yalincak, that subsequent to Yalincak's arrest, the landlord, Ring and Zofnass, on three occasions entered the 229 Upper Shad premises.

19. Subsequently, Yalincak has learned from his father, Dr. Omer B. Yalincak, and his sister, Hale Yalincak, that subsequent to Yalincak's arrest, the landlord, Ring and Zofnass, inflicted physical injury and harm on Yalincak's Maltese dog (hereinafter referred to as "Celine") by violently kicking Celine resulting in permanent damage.

20. Subsequently, Yalincak has learned from his father, Dr. Omer B. Yalincak, and his sister, Hale Yalincak, that subsequent to Yalincak's arrest, the landlord, Ring and Zofnass, made fraudulent misrepresentations to Yalincak's family as follows: (a) in or about July 15, 2005, Ring advised Dr. Yalincak that

---

[3] The Court, Margolis, M.J., initially entered an Order Setting Conditions for Release ("Order") on December 20, 2006. On appeal by the Government pursuant to 18 U.S.C. §3145(a)(1), the Court, Arterton, J., upheld the Order and Yalincak was released on bail with conditions on January 5, 2007

"if you move out before early August we [Ring and Zofnass] will refund you $5,500.00," representing the amount of the rent, which was pre-paid for the month of August 2005; and (b) "...will refund the security deposit of $11,000.00."

21. The Plaintiff's family in reliance on such representations vacated the property, however, no such refund was ever made by the landlord.

22. Subsequently, upon request of the aforementioned refund, the defendants made allegations of damages to the property and that the said refund had been spent on purported repairs to the property.

23. Upon further inquiry by the Plaintiff, as well as, information obtained in connection with a companion case, the Plaintiff has learned, among the numerous misrepresentations, the defendants herein subsequently advised the Plaintiff before any such refund was made that they would need to "check with the DOJ."

24. On January 13, 2006, the Plaintiff, through counsel of Bernard M. Grossberg entered into a Letter Agreement with the Government, Assistant United States Attorney David X. Sullivan of the United States Attorney's Office for the District of Connecticut. The said Agreements provides for recovery of any and all funds that are subject to federal forfeiture.

25. The Government has advised that the entire $77,000.00 is subject to federal forfeiture. The plaintiff, through counsel, has advised the defendants that $77,000.00 is due and payable pursuant to the said Agreement.

26. Thereafter and continuing until the present, the defendants have failed to return the sum of $77,000.00 to the Plaintiff.

27. As a result of the defendants' misrepresentations both to the Plaintiff and the Government, the defendants caused to be published and/or broadcast in numerous media outlets that the plaintiff was "behind on his rent[4]."

28. As a result of the defendants' misrepresentations both to the Plaintiff and the Government, the defendants caused the Plaintiff to be deprived of the equal protections of the laws, or of equal privileges under the laws. Indeed, had the defendants' not made the false statements as described above, the Court, Margolis, M.J., would not have listed the Defendants' aforementioned false statement as one of the reasons in her initial Order Of Detention entered on May 16, 2005, Margolis, M.J.[5]

29. As a result of the defendants misrepresentations and omissions of material fact as described above both to the Plaintiff and the Government, the defendants caused the Plaintiff intentionally, negligently, or recklessly inflicted emotional distress and mental anguish on the Plaintiff.

---

[4] "...Refers to false publication or broadcast which are defamatory on their face, Id., at 491-92. A plaintiff is entitled to recover general damages for libel per se, for humiliation, loss of reputation, etc. without having to plead and prove special damages. Id. Special, damages are "actual pecuniary" losses caused by the false statement." Miles v. Perry, 11 Conn. App. 584, 586, 602, 529 A.2d 199 (1987); Weldy v. Piedmont Airlines, Inc., 985 F.2d 57 (2d. Cir. 1993); Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d. 163, 176 (2d. Cir. 2000)

[5] See Hodge v. City of Long Beach, 306 F. Supp. 2d 88, 2004 U.S. Dist Lexis 2835 (E.D.N.Y. February 24, 2004); See also, Silva v. New Life Ins. Co., 2001 Conn. Super. Lexis 202, 26-27 (Conn. Super. Ct. 2001); Solberg v. Town of Oxford, No. 036149, 1995 Conn. Super. Lexis 2478 (Conn. Super. Ct. 1995); Williams v. Maislen, 116 Conn. 433, 437, 165 (1933); Marshak v. Marshak, 226 Conn. 652, 669, 62 A.2d 964 (1993) (quoting Cole v. Associated Construction Co., 141 Conn. 49, 54, 103 A.2d 529 (1954))

## V. CAUSES OF ACTION

### COUNT I

### (VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT)

### ("CUTPA")

### (AS TO ALL DEFENDANTS)

30. The Plaintiff hereby repeats and realleges each and every allegation set forth in Paragraphs 1-29, above, as if fully set forth herein.

31. The Defendants are "persons" engaged in "trade or commerce," as defined by Conn. Gen. Stat. Section 42-110a.

32. The Plaintiff is a Connecticut customer, hence the contract dated August 31, 2004 entered into by the parties targeted a Connecticut customer. See, Conn. Gen. Stat. §§33-1219(f)(1) and (2), §33-929(f); Conn. Gen. Stat. §52-59b.

33. On or about August 31, 2004, Renee Ring/Paul Zofnass sent via facsimile sent from (914) 7645134 to (203) 6224899 (Yalincak) an executed contract.

34. The above-described acts of the Defendatns constitute unfair and/or deceptive acts or practices in the conduct of a trade or business, in violation of Conn. Gen. Stat. Section 42-110a et seq.

35. The Defendants' conduct went beyond professional negligence, and amounted to unscrupulous conduct that violates the entrepreneurial and/or business aspects of the real estate profession.

36. As a direct and proximate result of the Defendants' conduct, as described above, the Plaintiff has suffered a loss of at least $77,000.00, or such other amount to be determined at trial.

## COUNT II

## (DEFAMATION)

## (AS TO ALL DEFENDANTS)

37. The Plaintiff hereby repeats and realleges each and every allegation set forth in Paragraphs 1-36, above, as if fully set forth herein.

38. The Defendants made false and defamatory statements as described above of fact regarding the Plaintiff with knowledge of such statements' falsity or reckless disregard or negligence for the accuracy of such statements.

39. The Defendants caused such false and defamatory statements to be published and/or broadcast.

40. As a result thereof, the Plaintiff prays for judgment against the defendants herein, jointly and severally, in the form of $1,000,000.00 in compensatory and special damages, and $100,000,000.00 in punitive and exemplary damages for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs associated with the prosecution of this act on.

## COUNT III

## (COMMON LAW FRAUD)

## (AGAINST ALL DEFENDANTS)

41. The Plaintiff hereby repeats and realleges each and every allegation set forth in Paragraphs 1-40, above, as if fully set forth herein.

42. The above described acts of the Defendants constitute common law fraud.

43. The Defendants made such representations and omissions of material facts with the actual intent that the Plaintiff and his family rely upon them.

44. The Plaintiff reasonably relied upon such representations and omissions of material fact to their detriment.

45. By reason of the fraudulent conduct of each of the Defendants, the Plaintiff has been damaged in the amount of at least $77,000.00

## COUNT IV
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
## (AS TO ALL DEFENDANTS)

46. The Plaintiff hereby repeats and realleges each and every allegation set forth in Paragraphs 1-45, above, as if fully set forth herein.

47. The Defendants intended to inflict emotional distress on the Plaintiff, or should have known that emotional distress was the likely result of their conduct.

48. Indeed, in or about May 2005, the Defendants, made misrepresentations both to the Plaintiff and the Government. The defendants caused to be published and/or broadcast in numerous media outlets that the plaintiff was "behind on his rent[6]."

49. The conduct of the Defendants in making such statements is extreme and outrageous and caused significant damages and injury to the Plaintiff.

---

[6] "...[refers to] false publication or broadcast which are defamatory on their face, Id., at 491-92. A plaintiff is entitled to recover general damages for libel per se, for humiliation, loss of reputation, etc. without having to plead and prove special damages. Id. Special, damages are "actual pecuniary" losses caused by the false statement." Miles v. Perry, 11 Conn. App. 584, 586, 602, 529 A.2d 199 (1987); Weldy v. Piedmont Airlines, Inc., 985 F.2d 57 (2d. Cir. 1993); Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d. 163, 176 (2d. Cir. 2000)

10

50.     The conduct of the Defendants is the direct cause of the Plaintiff's distress. Indeed, as a result of the Defendants' conduct the Plaintiff has had to expend time, money, and resources, as well as, seek counseling to address the distress caused by the Defendants.

51.     The emotional distress caused by the Defendants is severe and the allegations and statements made by the Defendants in ridiculing sensitive health concerns exceeds all bounds usually tolerated by a decent society.

52.     As a result thereof, the Plaintiff prays for judgment against the defendants herein, jointly and severally, in the form of $1,000,000.00 in compensatory and special damages, and $100,000,000.00 in punitive and exemplary damages for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs associated with the prosecution of this act on.

## COUNT V

## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

## (AS TO ALL DEFENDANTS)

53.     The Plaintiff hereby repeats and realleges each and every allegation set forth in Paragraphs 1-52, above, as if fully set forth herein.

54.     The allegations contained in Count IV, supra, in the alternative, constitute Negligent Infliction of Emotional Distress, if not Intentional Infliction of Emotional Distress.

55.     The Defendants should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.

56. As a result thereof, the Plaintiff prays for judgment against the defendants herein, jointly and severally, in the form of $1,000,000.00 in compensatory and special damages, and $100,000,000.00 in punitive and exemplary damages for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs associated with the prosecution of this act on.

## COUNT VI

## (VIOLATIONS OF 42 U.S.C. §1985)

## (AS TO ALL DEFENDANTS)

57. The Plaintiff hereby repeats and realleges each and every allegation set forth in Paragraphs 1-56, above, as if fully set forth herein.

58. Beginning on or about May 6, 2005 and continuing until May 2006, there existed a conspiracy between the Defendants.

59. The Defendants through the above described wrongful acts, misrepresentations, and omissions deprived, directly and indirectly, the Plaintiff of equal protection under the laws.

60. The Defendants committed overt acts in furtherance of their scheme, including, without limitation, the making of, or the participation in the making of false and defamatory statements as described above regarding the Plaintiff with reckless disregard or negligence for the accuracy of such statements.

61. The Plaintiff was injured in his person and property and deprived of his freedom, i.e., his right or privilege as a citizen[7].

---

[7] The Defendants actions are unconscionable and they exploited every opportunity available for their own gain to the detriment of the Plaintiff. (Regarding contracts generally, i.e., "unconscionable": See, Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App.495, 498 (1985))

62. As a result thereof, the Plaintiff prays for judgment against the defendants herein, jointly and severally, in the form of $1,000,000.00 in compensatory and special damages, and $100,000,000.00 in punitive and exemplary damages for the humiliation and loss of reputation suffered by the Plaintiff, as well as, all costs associated with the prosecution of this act on.

## VI.     PRAYERS FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays for relief and judgment, jointly and severally, against the Defendants as follows:

1. Awarding the Plaintiff, in the form of a judgment against the defendants, $1,000,000.00 in compensatory and incidental damages;

2. Awarding the Plaintiff, in the form of a judgment against the defendants, $77,000.00 actual damages pursuant to Conn. Gen. Stat. Section 42g(a);

3. Awarding the Plaintiff, in the form of a judgment against the defendants, $100,000,000.00 in exemplary, punitive, and statutory damages to the extent of the Plaintiff's entitlement thereto under applicable laws, including, without limitation, pursuant to Conn. Gen. Stat. Section 42-110g(a);

4. Awarding the Plaintiff all costs and disbursements he incurred in this act on;

5. Awarding the Plaintiff such other and further relief, both legal and equitable, as this Court, in its discretion may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury as to all issues so triable.

DATED: _____

                                         Respectfully submitted,
                                         HAKAN YALINCAK,

                                         Hakan Yalincak, Pro Se
                                    c/o Elise McKay
                                         Bernard M. Grossberg, Esq.
                                         30 Woodland St.
                                         Suite 11-I
                                         Hartford, CT 06105
                                         (860) 247-0138 Tel.
                                         (617) 737-8223 Fax.
                               bgrossberg@grossberglaw.com